**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Yener G.,

Petitioner,

v.

Todd Blanche, *Acting Attorney General of the United States*; Markwayne Mullin, *Secretary of the Department of Homeland Security*; David Venturella, *Acting Director of United States Immigration and Customs Enforcement*; David Easterwood, *Field Office Director, St. Paul Field Office, U.S. Immigration and Customs Enforcement*; and Eric Tollefson, *Sheriff of Kandiyohi County*, in their official capacities,

Respondents.

File No. 26-CV-04825 (JMB/SGE)

**ORDER**

---

Eugene Hummel, Norton Rose Fulbright US LLP, Minneapolis, MN, for Petitioner Yener G.

David W. Fuller and Sarah Mazzie, United States Attorney's Office, Minneapolis, MN, for Respondents Todd Blanche, Markwayne Mullin, David Venturella, and David Easterwood.

---

This matter is before the Court on Petitioner Yener G.'s[1] Petition for Writ of Habeas Corpus (Petition) under 28 U.S.C. § 2241 (Doc. No. 1 [hereinafter, "Pet."]), which names Todd Blanche, Markwayne Mullin, David Venturella, David Easterwood, and Eric

[1] This District has adopted a policy of using only the first name and last initial of any nongovernmental parties in immigration cases.

Tollefson as Respondents. (*Id.*) For the reasons explained below, the Court grants the Petition.

**FINDINGS OF FACT**

1. Yener G. is a 48-year-old native and citizen of Guatemala. (Pet ¶ 1.)

2. Yener G. first entered the United States near Sasabe, Arizona, in August 2023. (*Id.*) Yener G. was detained by a Border Patrol Agent but was released after the Border Patrol Agent confirmed his identity and lack of a criminal record. (*Id.*) Yener G. was issued a Notice to Appear (NTA). (Doc. No. 7-2.)

3. Yener G. has lived and worked in Willmar, Minnesota for the past three years. (Pet ¶ 2.) Yener G. has two children that live with their biological mother also in Willmar, Minnesota. (Doc. No. 7-3 at 3.)[2]

4. Yener G. works as a laborer, supports his family, attends his immigration hearings, and maintains a clean criminal record aside from two misdemeanor driving/traffic citations. (Pet. ¶ 2.) Yener G. has a pending asylum application. (Doc. No. 7-3 at 3.)

5. The Form I-213 bears the following digital signature next to the name "M 10924 Trevino" five different times:

---

[2] Respondents submitted a declaration made by an ICE deportation officer, James L. Van Der Vaart, to verify certain facts around Yener G.'s detention. The Court observes that Van Der Vaart does not attest to having personal knowledge of the facts and circumstances of Yener G.'s detention; instead, the declaration includes a boiler plate paragraph explaining that Van Der Vaart relies on his "professional knowledge, [his] review of records and systems maintained by ICE in the regular course of business, and information provided by other [unidentified] agents and officers." (Doc. No. 7 ¶ 3.) There is no sworn statement from any of the officers involved in taking Yener G. into custody or in issuing or serving the Form I-200.



(*Id.*)

6. On or about September 25, 2026, Yener G. was mugged and hit in the head and face with a pistol. (Pet. ¶ 3.) His assailants stole his phone, passport, and other identifying documents. (*Id.*)

7. As a result of the assault, Yener G. sustained fractures to his skull and cheekbones. (*Id.* ¶ 8.)

8. After he was mugged, Yener G. went to the Otter Tail County Sherriff's office seeking help. (*Id.* ¶ 4.) While he was at the Sherriff's office, Yener G. was detained pursuant to an outstanding bench warrant that was issued after Yener G. failed to appear at the arraignment for his driving citation from January 2026. (*Id.*) Yener G. paid the $400 bail bond and was released on or about September 27, 2026. (*Id.*)

9. As Yener G. was exiting the jail, he was taken into custody by a U.S. Immigration and Customs Enforcement (ICE) agent. (*Id.* ¶ 5.)

10. ICE Deportation Officer Fleck "encountered" Yener G. on September 25, 2026, while conducting Criminal Alien Program (CAP) Duties and reviewed "further records"[3] to determine that Yener G. was in removal proceedings. (Doc. No. 7-3 at 2.)

[3] The record contains no evidence concerning what records were reviewed, what information they contained, or how this information is collected. Further, the record contains no indication as to what "CAP duties" entail and what information officers collect during these duties.

11. At some unknown time on September 25, 2026, ICE Supervisory Detention and Deportation Officer Reller issued a Form I-200 administrative warrant. (Doc. No. 7-4.)

12. The Form I-200 administrative warrant was directed to "[a]ny immigration officer authorized pursuant to sections 236 and 287 of the [Immigration and Nationality Act (INA)] [i.e., 8 U.S.C. §§ 1226, 1357] and part 287 of title 8, Code of Federal Regulations, to serve warrants of arrest for immigration violations." (Doc. No. 7-4.) Thus, Respondents detained Yener G. pursuant to their authority under 8 U.S.C. § 1226.

13. The Form I-200 indicates that it was served at some unknown time on September 26, 2026. (Doc. No. 7-4.) The form bears the following signature next to the handwritten name "Trevino" and the number "10924" to establish service:



14. On November 13, 2026, Yener G. filed his Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (Pet.)

15. On November 16, 2026, the Court ordered Respondents to file a response to the Petition on or before 11:00 a.m. on November 18, 2026. (Doc. No. 3.) The Court expressly ordered that Respondents make an affirmative statement whether Respondents complied "with the Immigration and Nationality Act and accompanying regulations when they took Petitioner into custody." (*Id.*)

16. Respondents timely filed a response. (Doc. No. 6.)

## DISCUSSION

In his Petition, Yener G. seeks immediate release, arguing that his detention violates the requirements of the INA and accompanying regulations, as well as the Fourth Amendment of the U.S. Constitution and the Due Process Clause of the Fifth Amendment. In response to the Petition, however, Respondents argue that their detention of Yener G. comports with the requirements of due process and the terms of 8 U.S.C. § 1225(b)(2). For the reasons set forth below, the Court grants the Petition.

### A. Right to Habeas Relief

A writ of habeas corpus may be granted to any person who demonstrates he is in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2241(c)(3); *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (concluding that the Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States" (citing U.S. Const., Art. I, § 9, cl. 2)). For most of the nation's history, habeas review "has remained a critical check on the Executive, ensuring that it does not detain individuals except in accordance with law." *Hamdi*, 542 U.S. at 525 (quotation omitted). The right to challenge the legality of a person's confinement through a petition for a writ of habeas corpus "extends to . . . immigration-related detention." *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn. 2020) (citation omitted). The petitioner bears the burden of proving that his detention is illegal by a preponderance of

evidence. *Mohammed H. v. Trump*, 786 F. Supp. 3d 1149, 1154 (D. Minn. 2025).

**B. Inapplicability of 8 U.S.C. § 1225**

It is an undisputed matter of fact that Respondents detained Yener G. pursuant to their discretionary authority under 8 U.S.C. § 1226. The Form I-200 was directed to "[a]ny immigration officer authorized pursuant to sections 236 and 287 of the [INA] [i.e., 8 U.S.C. §§ 1226, 1357] and part 287 of title 8, Code of Federal Regulations, to serve warrants of arrest for immigration violations." (Doc. No. 7-4.) In response to the Petition, however, Respondents advance a different basis for the detention of Yener G.: 8 U.S.C. § 1225(b)(2)(A), as interpreted by *Avila v. Bondi*, 170 F.4th 1128, 1133–35 (8th Cir. 2026) (concluding that section 1225(b)(2) requires the mandatory detention noncitizens, without any individualized determination and regardless of whether the noncitizen is encountered at the border at the time of entry or in the interior of the United States months, years, or decades after entry); *but see Lopez Garcia v. Guadian*, 190 F.4th 305, 335 (4th Cir. 2026) (observing that Respondents' interpretation permits "[m]ass detention of marginalized individuals without due process" and "harkens back to some of the darkest moments in our country's history," when the judiciary "abdicat[ed] of its obligation to protect basic freedoms" and citing similar holdings from the First, Second, Third, Sixth, Seventh, Ninth, Tenth, and Eleventh Circuits); *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1180 (9th Cir. 2026) (rejecting Respondents' "new interpretation" as inconsistent with "the assertedly unambiguous language of the statute" and because "it raises various textual and interpretive problems").

This Court concludes that Respondents cannot now change the basis for the

detention of Yener G. He was detained under section 1226 alone, and Respondents advance no legal argument to support the proposition that they can alter this fact through filing of their written responsive submissions. Thus, just as it is stated on the Form I-200 on which Yener G.'s detention is based, the Court concludes that the Respondents detained Yener G. pursuant to the framework of 8 U.S.C. § 1226. *See, e.g.*, *Martha C.G.P. v. Blanche*, No. 26-CV-2308 (DWF/JFD), 2026 WL 1329577, at *2 (D. Minn. May 13, 2026) (rejecting respondents' contention that petitioner was subject to mandatory detention under section 1225(b) where Form I-200 warrant served during petitioner's arrest represented that detention was pursuant to section 1226); *Hector J.A.S. v. Shea*, No. 26-CV-2242 (JRT/DLM), 2026 WL 1243500, at *2 (D. Minn. May 6, 2026) (same); *see also Espinoza Avalos*, No. 8:26-CV-0191 (JFB/MDN), 2026 WL 1396593, at *1–3 (D. Neb. May 19, 2026).

### C. Violation of Applicable Regulatory and Statutory Requirements

Having determined that Respondents detained Yener G. pursuant to 8 U.S.C. § 1226, the Court considers Yener G.'s argument whether he was brought into custody pursuant to a valid warrant or pursuant to an authorized warrantless detention. The Court concludes that Yener G. was not brought into custody pursuant to a valid warrant or an authorized warrantless detention.

Under the INA and supporting regulations, agents may detain a non-citizen either on a valid warrant or in accordance with applicable warrantless detention procedures. 8 U.S.C. § 1357; 8 C.F.R. § 287.8(c)(2)(ii); s*ee also Venancio P.J. v. Blanche*, No. 26-CV-2740 (ECT/JFD), 2026 WL 1862252, at *2 (D. Minn. June 29, 2026). DHS's "general

procedures" for all "enforcement activities," including for the "conduct of arrests," requires that "[a] warrant of arrest shall be obtained except when the designated immigration officer has reason to believe that the person is likely to escape before a warrant can be obtained." 8 C.F.R. § 287.8(c)(2)(ii). Here, Respondents violated applicable regulatory and statutory requirements in a number of respects.

First, the Form I-200 warrant is invalid because there are unspecified facts to which Respondents point as their basis for establishing probable cause for taking Yener G. into custody. The warrant relied on "statements made voluntarily by the subject to an immigration officer and/or other reliable evidence that affirmatively indicate the subject either lacks immigration status or notwithstanding such status is removable under U.S. immigration law" as the determination for probable cause. (Doc. No. 7-4.) The Respondent's Form I-213 record for Yener G. states that an officer "encountered" Yener G. while "conduct[ing] CAP duties" and reviewed "further records." (Doc. No. 7-3 at 2.) Deportation Officer Fleck then "conducted a telephonic interview using the Spanish language, while Garcia was at the Otter Tail County Jail." (*Id.*) However, this record includes no information concerning what "further records" were reviewed. There is no declaration describing the information reviewed or explaining what information is being stored in these unidentified records. Further, although the Form I-200 purports to be based on statements made by Yener G., the record contains no evidence of the statements themselves, of whether Deportation Officer Fleck correctly identified himself at the time of the statements, of the duration of the interview, of the nature of Yener G.'s confinement at the time of the interview, of Deportation Officer Fleck's Spanish fluency to effectively

communicate with Yener G., or of Yener G.'s mental condition, which is especially relevant here because Yener G. had suffered a fracture to his skull and cheekbones earlier that day. Absent any such evidence, the Court cannot conclude that Yener G. voluntarily made any statements. *See e.g.*, *United States v. Sanchez*, 614 F.3d 876, 883 (8th Cir. 2010) (listing factors bearing on the voluntariness of a statement, including "the degree of police coercion, the length of the interrogation, its location, its continuity, and the defendant's maturity, education, physical condition, and mental condition"). Thus, the Form I-200 is not valid.

Second, the warrant is invalid because the serving officer cannot be identified. A Form I-200 administrative warrant—like the form under which authority Respondents took Yener G. into custody (Doc. No. 7-4)—is to be "issued only by those immigration officers listed in [section] 287.5(e)(2) . . . and may be served only by those immigration officers listed in [section] 287.5(e)(3)." 8 C.F.R. § 236.1(b)(1). Thus, DHS may detain a non-citizen using Form I-200 only if the Form I-200 indicates who the issuing and the serving immigration officers are. *See* 8 U.S.C. § 1226(a); 8 C.F.R. § 236.1(b)(1); *Tanneh W.S. v. Blanche*, No. 26-CV-2775 (LMP/EMB), 2026 WL 1801140, at *3 (D. Minn. June 23, 2026) (holding that a Form I-200 warrant was valid when both the issuing and serving officers' information verified them as deportation officers). This is because only immigration officers are "authorized to issue warrants of arrest under the relevant regulation." *Fernando C.C. v. Bondi*, No. 26-CV-1235 (LMP/JFD), 2026 WL 446408, at *5 (D. Minn. Feb. 17, 2026). Here, Respondents did not establish that they satisfied the second requirement of 8 C.F.R. § 236.1(b)(1). Though the record presented includes a

signature, surname, and number corresponding to the serving officer (*see* Doc. No. 7-4 at 1), the Court cannot determine who, in fact, served the Form I-200 in this case. The name "Trevino" and number "10924" is next to two markedly different signatures on two different documents presented. On the Form I-200 there appears a curved, looping signature that emphasizes the letter M:



(Doc. No. 7-4 at 1.) On the Form I-213, however, there appears an angular signature that emphasizes multiple letters and is punctuated by a period after a very elongated and straight tail:



(Doc. No. 7-3 at 1, 2, 3, 4.) These obvious differences cast doubt on who the serving officer was, and, therefore, whether Respondents have complied with 8 C.F.R. § 236.1(b)(1), which mandates that only certain officers serve administrative warrants. Absent a sworn statement from one of the officers involved, the Court cannot determine the identity of the serving officer, and the Form I-200 is also invalid for this reason.

Third, Respondents did not comply with the requirements of section 287.8(c)(2)(iii). That regulation provides that, "[a]t the time of the arrest," the detaining officer must do the following two things: "(A) [i]dentify himself or herself as an immigration officer who is

authorized to execute an arrest; and (B) [s]tate that the person is under arrest and the reason for the arrest." *Id.* § 287.8(c)(2)(iii). There is no evidence that any officer identified themselves to Yener G. or informed Yener G. that he "[wa]s under arrest and the reason for the arrest," as required by regulation. *See id.* § (c)(2)(iii). Absent any evidence that officers identified themselves to Yener G. and informed Yener G. of the reason for his detention, the Court concludes that Respondents violated the plain requirements of 8 C.F.R. § 287.8(c)(2)(iii).

Finally, under the INA, absent a valid warrant (as here), Respondents may take a person into custody if there is probable cause "to believe that the [noncitizen] so arrested is [1] in violation of any[] law or regulation [made in pursuance of law regulating the admission, exclusion, expulsion, or removal of noncitizens] and [2] is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2); *see also* 8 C.F.R. § 287.8 (c)(2)(ii) (stating that a warrant "shall be obtained except when the designated immigration officer has reason to believe that the person is likely to escape before a warrant can be obtained"); *U.S. v. Diaz-Quintana*, 623 F.3d 1237, 1239 (8th Cir. 2010) (concluding that the phrase "reason to believe" in section 1357(a)(2) means "constitutionally required probable cause"). Here, Respondents make no argument whatsoever that officers satisfied either prong of section 1357(a). (*See* Doc. No. 6.) Absent any argument, the Court necessarily concludes that Respondents have not established that at the time they initiated

the detention, officers had probable cause to believe Yener G. was likely to escape.[4] In addition, and in contrast to the facts in *Quintana*, 623 F.3d at 1238, 1240–41, the record presented in this case establishes that Yener G. had just suffered a physical assault, posted $400 in bail money, and cooperated with detaining agents. Thus, the Court concludes that Respondents violated section 1357(a)(2).

For each of these independent reasons, the detention of Yener G. is unlawful and immediate release is the appropriate remedy. *Munaf v. Geren*, 553 U.S. 674, 693 (2008) ("Habeas is at its core a remedy for unlawful executive detention. The typical remedy for such detention is, of course, release."); *see also, e.g.*, *Felix Alberto J.M. v. Blanche*, No. 26-CV-2944 (LMP/DLM), 2026 WL 1906596, at *5 (D. Minn. July 2, 2026) (concluding Respondents' detention of petitioner was invalid warrantless detention and petitioner was entitled to remedy of release); *Venancio P.J.*, 2026 WL 1862252, at *3 (same); *Hector J.A.S.*, 2026 WL 1243500, at *2 (ordering release of petitioner where respondents did not issue NTA until booking, well after taking the petitioner into custody); *Pina C.D.B. v. Bondi*, No. 26-CV-1929 (KMM/DJF), 2026 WL 810676, at *3 (D. Minn. Mar. 24, 2026) (concluding "immediate release is the proper remedy" when a person is taken into custody without a valid administrative warrant); *Jouquin C.S. v. Bondi*, No. 26-CV-1438 (DWF/DJF), 2026 WL 483256, at *2–3 (D. Minn. Feb. 20, 2026) (ordering release because the Form I-200 was invalid); *Claudio A.A. v. Bondi*, No. 26-CV-742 (KMM/LIB), 2026

---

[4] Given the conclusion that Respondents have not established the second prong of section 1357(a)(2), the Court need not determine whether Respondents established the first prong of this section.

WL 468232, at *7 (D. Minn. Feb. 12, 2026) (concluding that failure to provide a warrant before taking a person into pursuant to section § 1226(a) is a violation of due process rights and collecting cases), *report and recommendation adopted*, No. 26-CV-742 (KMM/LIB), 2026 WL 478347 (D. Minn. Feb. 18, 2026); *Carlos F.P.P v. Blanche*, No. 26-CV-3123 (JWB/JFD), 2026 WL 2824801, at *7 (D. Minn. Sep. 21, 2026) (ordering release after finding that respondents did not follow § 1357 requirements of warrantless detention and § 1225 did not "independently authorize continuation of [petitioner's] custody").[5]

**ORDER**

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT the Petition (Doc. No. 1) is GRANTED as follows:

1. Respondents are ORDERED to release Petitioner Yener G. immediately, without conditions, and in any event no later than 4:00 p.m. CT on November 20, 2026.

[5] Although the Court need not address the question whether Respondents' detention of Yener G. violates his due process rights under the Fifth Amendment, it nevertheless alternatively concludes that, on balance, the *Mathews v. Eldridge* due-process factors tip in his favor. Yener G. has a significant private interest at stake (i.e., his liberty, his detention in a carceral setting); the risk of erroneous deprivation through incarceration is needlessly high when available an inexpensive procedures protect against erroneous deprivations of liberty; and the federal government has very little interest in incarcerating individuals en masse who pose little or no risk of flight or danger to the community like Yener G., who, has a minor criminal record and who had been conditionally paroled into the interior in 2023 upon a determination that he posed no such risks. Thus, Yener G.'s ongoing detention is also unlawful for this reason. *See, e.g.*, *R.M. v. Blanche*, No. 26-CV-2283 (LMP/DLM), 2026 WL 1506306 (D. Minn. May 29, 2026) (concluding that respondents' mandatory detention without bond under 8 U.S.C. § 1225(b)(2) and *Avila* violated petitioner's rights to procedural due process and ordering a bond hearing); *Jesus Alejandro G.A. v. Blanche*, No. 26-CV-1932 (LMP/ECW), 2026 WL 1383138 (D. Minn. May 18, 2026) (same).

2. On or before 11:00 a.m. CT on November 23, 2026, counsel for Respondents shall file a letter affirming that they have released Petitioner Yener G.

3. On or before 11:00 a.m. CT on November 23, 2026, counsel for Respondents shall also file a declaration pursuant to 28 U.S.C. § 1746 by an individual with personal knowledge that states when and where the Petitioner was released, attaches any and all documentation concerning the Petitioner's release, and affirms with supporting documentation that all property of Petitioner was returned to Petitioner upon release (or, if property is retained, state which property is retained, the legal basis for its retention, and affirm that Respondents duly provided Petitioner with certified copies of any and all immigration-related documentation). Respondents must submit each of the following three forms to affirm return of Petitioner's property: I-77, I-216, and G-589. If Petitioner's property is lost, Respondents must also submit form I-387, "Report of Detainee's Missing Property." If Respondents cannot provide one or more of these forms, Respondents must address why they are unable to do so.

4. Petitioner Yener G. may move separately within 30 days of final judgment in this action to recover attorney's fees and costs under the Equal Access to Justice Act, 20 U.S.C. § 2412(d).

5. To the extent Petitioner Yener G. seeks additional relief, the Petition is DENIED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: November 19, 2026

/s/ *Jeffrey M. Bryan*
Judge Jeffrey M. Bryan
United States District Court